IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TROY L. BISHOP, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-1375 |
| | § | |
| VANESSA JONES, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Troy L. Bishop, a state inmate proceeding *pro se* and *in forma pauperis*, filed this section 1983 civil rights complaint against Vanessa Jones, Vice Chairman of Classification and Records for the Texas Department of Criminal Justice ("TDCJ"); Brian Clendennen, Director of Offender Grievances for the Wynne Unit; Bobby Barnett, Assistant Director of Offender Grievances for the Wynne Unit; and Lindsay Lewis, a grievance investigator employed at the Wynne Unit.[1] Defendants filed a motion for summary judgment, (Docket Entry No. 37), to which Plaintiff filed a reply (Docket Entry No. 40).

After consideration of the pleadings, the motion and response, the probative summary judgment evidence, and the applicable law, the Court GRANTS summary judgment and dismisses this case for the reasons set forth below.

---

[1] Plaintiff originally sued Clendennen and Barnett as unnamed "Does." (Docket Entry No. 1, p. 3). Plaintiff's claims against other defendants were severed from this case and transferred to the Northern District of Texas, Amarillo Division. (Docket Entry No. 2.)

*Factual Background and Claims*

Plaintiff complains that he suffers from a psychological disorder which causes him to cut himself with razor blades. Because of this disorder, prison medical staff admitted him to the PAMIO[2] program at the Bill Clements Unit in 2000. They subsequently discharged him from the program in 2002.[3] Plaintiff's ensuing deliberate indifference and retaliation lawsuit filed against PAMIO medical officials in 2002 was dismissed as frivolous in 2005. *Bishop v. Orr*, C.A. No. 02-CV-0202, 2004 WL 2826467 (N.D. Tex. 2005). Plaintiff was recommended for the PAMIO program later in 2003 and again in early 2005, but was denied admission both times. (Docket Entry No. 1, p. 6, 32). Plaintiff eventually was transferred to the Bill Clements Unit on January 25, 2005, for admission to the PAMIO program, but was returned to the Wynne Unit a few days later when his program admission was withdrawn. (Docket Entry No. 37, Exhibit A, pp. 1-2.) As grounds for withdrawal of plaintiff's admission, a clinical note written by PAMIO prison physician Dr. Karney, dated February 3, 2005, cited "previous litigation and conflict between [plaintiff] and clinical and

---

[2]The Program for the Aggressive Mentally Ill Offender (PAMIO) is a treatment program designed as an alternative to administrative segregation for aggressive mentally ill offenders who do not benefit from traditional prison programs. Its goals are to provide mental health treatment and control the inmate's behavior while he is incarcerated and to provide therapeutic experiences to reduce the likelihood of aggressive behavior after release. The PAMIO program utilizes behavior therapy techniques to reduce hostile aggression through positive reinforcement, extinction, or response competition.

[3]The record does not make clear the exact dates plaintiff was admitted to and discharged from the PAMIO program.

security staff," and described plaintiff as a risk management issue. (Docket Entry No. 1, p. 6).

Defendant Jones received Dr. Karney's clinical recommendation for withdrawal of plaintiff's admission into the Bill Clements Unit program, and finalized plaintiff's transfer back to the Wynne Unit. (Docket Entry No. 37, Exhibit A, pp. 1-2). Upon returning to the Wynne Unit, plaintiff deliberately cut his arm with a standard razor issued to inmates for grooming purposes. (Docket Entry No. 15, p. 5.) He submitted a Step 1 grievance on August 30, 2005, seeking a transfer back to the Bill Clements Unit PAMIO program where he would not have access to razors. (Docket Entry No 1, Exhibit A, p. 5.) Defendant Lewis rejected the Step 1 grievance as being submitted outside the grievable time period. *Id*. Plaintiff then submitted a Step 2 grievance. Defendant Barnett, signing on behalf of defendant Clendennen, rejected the Step 2 grievance, and informed plaintiff that an unprocessed Step 1 grievance was non-appealable. (Docket Entry No. 1, Exhibit D.)

Plaintiff claims in the instant lawsuit that the defendants denied him due process by rejecting his grievances, and that they were deliberately indifferent to his health and safety needs by not transferring him back to the Bill Clements Unit PAMIO program. He further claims that defendant Jones transferred him back to the Wynne Unit in retaliation for his filing the 2002 lawsuit. (Docket Entry No. 1, pp. 3, 5-8). Plaintiff seeks a declaratory judgment with recovery of compensatory and punitive damages. Although plaintiff does not indicate whether he is suing defendants in their official or individual capacities, defendants'

3

motion for summary judgment asserts entitlement to both Eleventh Amendment and qualified immunity.

*Summary Judgment Standard of Review*

Defendants seek summary judgment and argue that plaintiff's claims fail as a matter of law. Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Under Rule 56, a federal district court must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party bears the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Capitol Indem. Corp. v. U.S.*, 452 F.3d 428, 430 (5th Cir. 2006).

Once the moving party meets its initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(c). The nonmovant cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Moreover, a nonmovant's burden is not met by mere reliance on the allegations or denials in his pleadings. *Morris v. Covan Worldwide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). To survive summary judgment, the nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the

cause of action. *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). Facts, and inferences reasonably drawn from those facts, should be taken in the light most favorable to the nonmovant. *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 456 (1992). Where the nonmovant fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, no genuine issue of material fact can exist. *Celotex*, 477 U.S. at 322-23; *Whiting v. University of Southern Miss.*, 451 F.3d 339, 345 (5th Cir. 2006).

Although plaintiff proceeds *pro se* in this lawsuit, he is bound by the pleading and proof requirements of Rule 56 regarding the instant summary judgment proceeding. *See Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

*Analysis*

A.   *Failure to Respond to Grievances*

Plaintiff claims that defendants Lewis, Barnett, and Clendennen wrongfully ignored or denied his Step 1 and Step 2 grievances. However, it is well settled that inmates do not enjoy a protected liberty interest in having grievances resolved or resolved to their satisfaction. *Geiger v. Jowers*, 404 F.3d 371, 374-75 (5th Cir. 2005). Further, plaintiff admits that the defendants did not ignore his grievances, as they informed him that the grievances were untimely. Accordingly, plaintiff's claims that these defendants denied him due process by ignoring and denying his grievances lack an arguable basis in law or fact, and entitle plaintiff to no relief.

B.   *Deliberate Indifference*

Plaintiff further claims that the defendants were deliberately indifferent to his health and safety needs by not transferring him back to the Bill Clements Unit PAMIO or Step Down program where he would not be issued razors for grooming.

Prison officials act with deliberate indifference when they know of and disregard an excessive risk to an inmate's health or safety; the prison officials must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and they must also draw that inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Accordingly, plaintiff here must show that defendants deliberately ignored or disregarded a substantial risk of serious harm to plaintiff by not transferring him back to the Bill Clements Unit PAMIO or Step Down program.

The uncontroverted probative summary judgment evidence negates plaintiff's claim of deliberate indifference. As shown by defendant Jones's summary judgment affidavit, plaintiff's transfer was denied in reliance on Dr. Karney's medical recommendation that he not be transferred to the Bill Clements Unit. In her summary judgment affidavit, Jones states as follows:

> I am currently the Vice Chairman of Classification and Records for the [TDCJ]. I am a defendant in [the instant lawsuit]. At all times relevant to the allegations made against me in [plaintiff's] Complaint, I was a member of the State Classification Committee in Huntsville for the [TDCJ].
>
> [Plaintiff] was transferred to the Clements Unit due to being accepted into the Step Down program per the request of Dr. Karney on January 25, 2005. I,

> Vanessa Jones, did authorize the transfer per the request of the mental health department. On February 2, 2005, I received another request from Dr. Karney to transfer [plaintiff] from the Clements Unit due to his being discharged from the Step Down program. The mental health department at the Clements Unit recommended that [plaintiff] not return to the facility due to previous litigation and conflict between the patient and both clinical and security staff. The mental health department advised that [plaintiff] was unsuitable for the PAMIO program or the Step Down program. On June 10, 2005, [plaintiff] was reviewed and denied a transfer back to the Clements Unit and into the PAMIO and/or Step Down program due to Dr. Karney's previous request to Classification and Records.
>
> The State Classification Committee (SCC) in Huntsville is responsible for the ultimate determination of whether an inmate is transferred to a different unit or not. The SCC can receive two different types of requests to transfer an offender. One type of request comes from the Unit Classification Committee (UCC), a three member panel at the unit level that reviews an offender's current status and classification. When the SCC receives a recommendation from the UCC, the SCC will review the recommendation and has the authority to either accept or deny that recommendation.
>
> The second type of request comes from a medical department and the SCC does not have the authority to override medical recommendations made by licensed medical providers. The [TDCJ] contracts with both the University of Texas Medical Branch and the Texas Tech University Health Sciences Center to provide medical care for offenders. Employees of these two agencies are not employees of the [TDCJ].
>
> *In this case, the recommendation I received regarding [plaintiff's] transfer was a medical request that came from Dr. Karney at the Clements Unit. As such, I have no authority to override that request, but can only put into effect the recommendation of Dr. Karney.* The goal of the SCC is to properly classify and assign offenders for their own well-being and for the safety and security of the various units in TDCJ. As such, we rely on the expertise of medical providers to make medical recommendations. *The SCC does not override or deny those recommendations.*

(Docket Entry 37, Exhibit A) (emphasis added).

As shown by this uncontroverted testimony, defendants lacked the authority to override Dr. Karney's recommendation that plaintiff not be transferred to the Bill Clements Unit PAMIO or Step Down program.[4] Accordingly, no deliberate indifference is shown and defendants are entitled to summary judgment dismissal of this claim against them.

C.  *Retaliation*

Plaintiff claims that defendant Jones transferred him from the Bill Clements Unit back to the Wynne Unit in retaliation for his filing lawsuits against prison staff and medical providers. To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his exercise of that right, (3) a retaliatory adverse act, and (4) causation. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). An inmate must allege more than his personal belief that he is the victim of retaliation. *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). Mere conclusory allegations of retaliation are insufficient to withstand a proper motion for dismissal of the claim. *Id*. The inmate must produce direct evidence of motivation or a chronology of events from which retaliation plausibly may by inferred. *Id*. That is, a successful claim of retaliation requires a showing that, but for some retaliatory motive, the

---

[4]Plaintiff's deliberate indifference and retaliation claims against Dr. Karney for his recommendation against plaintiff's transfer to the Bill Clements Unit PAMIO or Step Down program remain pending before the Northern District of Texas, Amarillo Division, in *Bishop v. Karney*, C.A. No. 06-CV-0167 (N.D. Tex.).

complained of adverse incident would not have occurred. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).

As already noted by the Court, defendant Jones's uncontroverted affidavit makes clear that the State Classification Committee, of which she is a member, lacked the authority to override Dr. Karney's recommendation against plaintiff's transfer to the Bill Clements Unit. As the uncontested probative summary judgment evidence shows that Jones transferred plaintiff back to the Wynne Unit pursuant to established, non-discretionary TDCJ policy, and not for some purported retaliatory motive, plaintiff fails to meet his burden of proof for establishing retaliation. Accordingly, Jones is entitled to summary judgment dismissal of plaintiff's retaliation claim against her.

      D.     *Official Capacity Claims*

The Eleventh Amendment to the United States Constitution bars suits in federal courts by citizens of a state against their own state or an agency or department of that state, and precludes recovery of monetary damages against the state. *Clay v. Tex. Women's Univ.*, 728 F.2d 714, 715 (5th Cir. 1984). A suit against a state official in his official capacity is not against the official, but rather against the state itself. *Will v. Mich. State Police*, 491 U.S. 58, 71 (1989). As such, neither the state nor its officials acting in their official capacity are "persons" for purposes of section 1983. Accordingly, to the extent plaintiff sues defendants in their official capacities, such claims are barred by the Eleventh Amendment as a matter of law.

## CONCLUSION

For the reasons stated above, the Court GRANTS the motion for summary judgment (Docket Entry No 37) and DISMISSES plaintiff's claims with prejudice. Any and all pending motions are DENIED AS MOOT.

The Clerk will provide copies of this order to the parties.

Signed at Houston, Texas on September 9, 2008.

_____
Gray H. Miller
United States District Judge